IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-2703-STA |
| | ) | |
| THIRTEEN THOUSAND FIVE HUNDRED DOLLARS ($13,500) IN U.S. CURRENCY, | ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING CLAIMANT'S MOTION TO DISMISS**

Before the Court is Plaintiff's Motion for Summary Judgment (D.E. # 22) filed on September 29, 2008. Claimant Scott Crawford ("Crawford"), who is acting *pro se* and is currently incarcerated, responded in opposition to the Motion on December 2, 2008. Crawford also filed his own Motion to Dismiss (D.E. # 16) on May 19, 2008. For the reasons set forth below, Plaintiff's Motion is **GRANTED** and Crawford's Motion is **DENIED**.

**BACKGROUND**

This *in rem* forfeiture action involves defendant property $13,500.00 in U.S. currency. The government filed its Verified Forfeiture Complaint on November 2, 2007, in which it alleged that the Defendant property was recovered from Claimant Scott Crawford ("Crawford") between February 12, and February 19, 2004, in Memphis, Tennessee. Verified Compl. ¶ 4. According to the government, the currency constitutes or is derived from proceeds

1

of bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666. *Id*. at ¶ 6. On March 2, 2004, Crawford was indicted by a federal grand jury for the Western District of Tennessee in Case No. 04-20103-D, along with co-defendants Eric Maurice Holley ("Holley") and Jeffrey Kyle Holliday ("Holliday"). Burns Verified Comp. Aff. at ¶ 5. The indictment charged the defendants with criminal conspiracy, in violation of 18 U.S.C. § 371; obstruction of justice, in violation of 18 U.S.C. § 1510; bribery, in violation of 18 U.S.C. § 666; witness intimidation, in violation of 18 U.S.C. § 1512; and the selling of defaced firearms, in violation of 18 U.S.C. § 922(k). *Id*. On March 14, 2005, Crawford entered a plea of guilty to Counts 2, 3, 4, 5, 6, and 9 of the indictment, which charged him with criminal conspiracy, bribery, obstruction of justice, witness intimidation, and the selling of defaced firearms, respectively. *Id*. at ¶ 6. A sentencing hearing was held on August 19, and 22, 2005, at which time Crawford was sentenced to 71 months of imprisonment to be followed by three years of supervised release. *Id*. at ¶ 7.

According to the government, Crawford signed a written statement after his arrest in which he confessed to the following facts. Beginning in January 2004 and continuing through the end of February 2004, Memphis Police Department ("MPD") officers Lt. Jeff Clark and Det. Paul Wright had a series of recorded communications with Crawford and in several instances with Holliday, a client and personal friend of Crawford. *Id*. at ¶ 11. During these communications, Lt. Clark and Det. Wright, who were acting undercover and posing as corrupt police officers, discussed several illegal schemes with Crawford. *Id*. In addition, Crawford delivered bribes to Lt. Clark in the form of a $5,000 cash payment on February 12, 2004, a $3,500 payment on February 19, 2004, and a $5,000 payment on February 19, 2004. *Id*. These cash payments constitute the defendant property in this case. *Id*.

2

One scheme involved Crawford agreeing to pay Lt. Clark to destroy evidence and ensure that a firearms charge against Holley, a Crawford client, was dismissed. *Id*. at ¶ 12.[1] Lt. Clark was to destroy evidence incriminating Holley and have his case dismissed in exchange for two separate cash payments of $5,000.00 each. *Id*. at ¶¶ 15-21. According to Crawford's written statement, he himself left the first $5,000.00 payment in a magazine rack at the Union Planters Bank at 3307 Poplar Avenue, Memphis, Tennessee. *Id*. at ¶ 16. The full amount of this payment was Crawford's own money. *Id*. at ¶ 22b. Crawford informed Lt. Clark that he could retrieve the second $5,000.00 payment from a mailbox near Lt. Clark's office. *Id*. at ¶ 21. The second payment included Crawford's own money as well as money from Holley. Id. at ¶ 22c. In a separate, contemporaneous bribery scheme, Crawford had agreed to pay Lt. Clark $7,500.00, in exchange for Lt. Clark's help to convince federal prosecutors to file a motion for a downward departure for Holliday.[2] *Id*. at ¶ 23. During the morning of February 19, 2004, surveillance agents observed Crawford near a mail box near Lt. Clark's office where agents later recovered $3,500.00 in cash in a Burger King bag. *Id*. at ¶ 25.

In its Motion for Summary Judgment, the government argues that there are no issues of material fact in this case and that the government is entitled to judgment as a matter of law. The government avers that the defendant currency constitutes the proceeds of bribery and is

---

[1] Counts 2,3,4,5 and 6 in Case No. 04-20103-D concern this scheme.

[2] The motion for downward departure was to be filed pursuant to U.S.S.G. § 5K.l. in a then-pending federal criminal case, No. 03-20040-Ma. Lt. Clark was to inform federal prosecutors of Holliday's fictitious assistance to law enforcement officers in order to obtain the downward departure. Crawford and another attorney represented Holliday in that case, and Holliday was awaiting sentencing. Counts 2 and 7 in Case No. 04-20103-D concern this scheme. *Id*. at ¶ 23.

consequently subject to forfeiture under 18 U.S.C.A. § 981. It is undisputed that the bribes were illegal pursuant to 18 U.S.C.A. § 666, which is among the offenses constituting "specified unlawful activity" where forfeiture is appropriate. Claimant is estopped from now arguing that he is not guilty of bribery because of his guilty plea and signed, agreed-upon facts from his underlying criminal case. Claimant has further admitted to bribing Lt. Clark. In his responses to the government's Requests for Admission, Crawford was asked to admit the following: "Admit that you delivered bribes to Lt. Clark of the Memphis Police Department in the form of a $5,000 cash payment on February 12, 2004, a $3,500 payment on February 19, 2004, and a $5,000 payment on February 19, 2004." Pl.'s Mot. Summ. J. 12. Crawford responded: "I admit that I delivered funds as request (sic) by Officer Clark, I don't have access to records to determine the exact dates." *Id*. Based upon the record, there also exists more than enough evidence for the government to meet its burden to establish by a preponderance of the evidence that the Defendant currency was, in fact, the proceeds of bribery. Therefore, the government contends that it is entitled to summary judgment.

In his response in opposition, Crawford argues that material issues of fact do exist and preclude summary judgment in the government's favor.[3] First, Crawford alleges that the $10,000 in currency to which he has made a claim is not by definition the proceeds of bribery. Rather Crawford states that the government has failed to establish that the defendant currency was "the income, profit or the funds arising upon the sale of property/criminal conduct of bribery." Claimant's Resp. 2. Additionally, Crawford argues that there is an issue of fact

---

[3] Crawford's contentions in his response reiterate many of the same arguments presented in his Motion to Dismiss (D.E. # 16).

concerning the violation of his constitutional rights, namely, the delay in bringing the instant forfeiture action. The government not only delayed bringing this action, but the government also confiscated many of Crawford's personal and business records which would permit him to establish his claim to the defendant currency.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[4]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[5] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[4] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

verdict.[8] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[9]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[11] Finally, the "judge may not make credibility determinations or weigh the evidence."[12] Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[13]

In a civil forfeiture action, the United States bears the burden of demonstrating "probable cause to believe that a substantial connection exists between the property to be forfeited" and illegal activity.[14] Probable cause is demonstrated when there are reasonable grounds " 'supported by less than *prima facie* proof but more than mere suspicion' " for the belief that the

---

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[9] *Id.* at 251-52 (1989).

[10] *Celotex*, 477 U.S. at 322.

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[13] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[14] *United States v. Rural Route 1, Box 137-B,* 24 F.3d 845, 848 (6th Cir.1994) (per curiam).

property is subject to forfeiture.[15] Once the government has provided sufficient evidence to show probable cause, the burden shifts to the claimant to demonstrate by a preponderance of the evidence "that the property is not subject to forfeiture."[16]

## ANALYSIS

The United States Code provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" criminal acts including "specified unlawful activity," as defined in 18 U.S.C.A. § 1956(c)(7), "is subject to forfeiture to the United States."[17] That section defines "specified unlawful activity" to include 18 U.S.C.A. § 666, which makes it a crime to "corruptly give[], offer[], or agree[] to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more."[18] Therefore, any real or personal property which constitutes or is derived from proceeds traceable to the offense of bribery as defined in section 666 is subject to forfeiture under federal law.

Despite the fact that neither plaintiff nor Crawford have addressed the issue, standing is

---

[15] *Id.* (quoting *United States v. 526 Liscum Drive,* 866 F.2d 213, 216 (6th Cir.1989)).

[16] *U.S. v. One Cessna T-210-N Single Engine Aircraft*, 1998 WL 792051, *1-2 (6th Cir. 1998); *see also United States v. $22,287.00 in U.S. Currency,* 709 F.2d 442, 446 (6th Cir.1983).

[17] 18 U.S.C.A. § 981(a)(1).

[18] 18 U.S.C.A. § 666.

7

prerequisite for contesting a governmental forfeiture action.[19] A claimant "must have statutory standing through compliance with Supp. Admiralty and Maritime Claims R. C(6), as well as the Article III standing required for any action brought in federal court."[20] Article III standing requires that a claimant have "a colorable ownership, possessory or security interest in at least a portion of the defendant property."[21] This does not mean that the claimant must prove the merits of his underlying claim to the property, only that he has a facially colorable interest in the property.[22] "Colorable claims which confer standing include the most obvious type of interest in seized property, an ownership interest."[23] Mere possession of the property is not enough, for a claimant must also provide "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property."[24]

It is undisputed in this case that all $13,500 of the defendant currency was paid for the purpose of bribing Lt. Clark. It is also undisputed that Crawford provided $10,000 of the defendant currency from his own funds. Therefore, Crawford had at one time a "colorable

---

[19] *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998) ("The Government very often does not contest a claimant's standing, *see* 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 9.04, at p. 9-68.7 (1997), and a rule requiring claimants to support all claims with standing evidence would often involve unnecessary time and expense for the litigants as well as the court").

[20] *Id*.

[21] *Id*.

[22] *Id*. at 497-98.

[23] *Id*. at 498.

[24] *Id*.

8

interest" in the $10,000 which he has claimed in this suit. The issue before the Court is whether Crawford has standing to contest the forfeiture and can show that he continued to have that colorable interest in the $10,000 at the time the government recovered the currency. If Crawford's interest continued at the time of the seizures, then he has standing. If his interest in the property ceased, then Crawford's claim must fail and the government is entitled to summary judgment.

Neither the government nor Crawford have contested the fact that Crawford arranged three separate cash payments to Lt. Clark: the $5,000 cash payment on February 12, 2004; the $3,500 payment on February 19, 2004; and the $5,000 payment on February 19, 2004. Furthermore, the parties agree that the government did not seize the currency from Crawford's person at the times of the three separate seizures. Rather Crawford left the currency at pre-arranged drop points where Lt. Clark would know to retrieve the payments: a magazine rack and a mailbox near Lt. Clark's office. There is no allegation that Crawford was even in the vicinity of the drop-points when the government recovered each of the cash payments. There is no allegation that Crawford intended to return to the drop-points and retrieve the currency before Lt. Clark could. There is no allegation that Crawford placed the currency in those locations by mistake or error. It is clear that Crawford relinquished his ownership of the currency when he left the currency as a bribe in the designated drop-points and gave up possession in favor of Lt. Clark. As a result, Crawford had relinquished his colorable interest in the money at the time the currency was seized. Therefore, Crawford lacks standing to contest the forfeiture because he no longer had a colorable interest in the Defendant currency at the time of the seizure.

Even if the Court found that Crawford had standing to contest the forfeiture, the Court

9

finds that the government is still entitled to summary judgment because there is no genuine issue of material fact as to the defendant currency. It is undisputed that the $10,000 which Crawford has claimed was directly traceable to the attempted bribery of Lt. Clark. Crawford has admitted in his underlying criminal case and again in the case at bar that he used the funds to attempt to bribe Lt. Clark in violation of federal law. Crawford only makes the legal argument that the $10,000 represented the lawfully-gained profits of Crawford's legal practice. Therefore, the funds were not "the proceeds" of any "specified unlawful activity." Crawford's focus on the manner in which he came to own the $10,000 is misplaced. Section 981(a)(1), the forfeiture statute, defines the property subject to forfeiture to include "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" crimes including bribery. The statute is not concerned with the origin of the funds but with the illegal activity to which the funds are directed. In other words, the application of the forfeiture statute is not limited to funds earned from lawful activities but to any property which is traceable to bribery. Crawford has admitted that the $10,000 was paid as a bribe to Lt. Clark in violation of 18 U.S.C.A. § 666. As a matter of law, there can be no question then that the defendant property "constitutes proceeds traceable to" the crime of bribery in violation of Section 666. Therefore, the $10,000 is subject to forfeiture.

Even if the Court accepted Crawford's argument, Crawford would still have no right to use the courts to recover the property under the common law rule that property voluntarily surrendered under an illegal contract cannot be recovered by a party *in pari delicto*.[25] It is well established that "an individual who voluntarily delivers property pursuant to an illegal contract

---

[25] *Lopez v. U.S.*, 2006 WL 2788999, *7 (D.D.C. 2006).

may not later seek the assistance of the courts to compel the return of that property."[26]  More specifically, "a person convicted of bribery has no right to have the bribe money returned to him."[27]  Crawford has admitted that he used the currency to attempt to bribe a police officer in violation of federal law and has in fact been convicted of bribery.  Therefore, he has no cognizable right to have the money returned to him.

Finally, Crawford has argued that the government's delay in bringing its forfeiture action against his property has violated his constitutional rights.  The Court finds this contention meritless.

## **CONCLUSION**

The government is entitled to judgment as a matter of law.  Crawford lacks standing to contest the forfeiture of the defendant currency because his ownership interest in the property had ceased at the time of the seizure.  Additionally, the currency constitutes the proceeds of bribery as defined under federal law and is thus subject to seizure.  Crawford also finds himself *in pari delicto* and has no right to use this Court to recover funds he paid as a bribe.  For the same reasons, Crawford's Motion to Dismiss must be denied.  Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

---

[26] *Lopez*, 2006 WL 2788999, *7 (upholding forfeiture of $50,000 in bribe money against claimant who had paid the sum to undercover agent in return for his release from prison); *U.S. v. Mantilla*, 302 F.3d 182 (3d. Cir. 2002) (upholding forfeiture of $900,000 in currency used for purchase of illegal narcotics); *U.S. v. Farrell*, 606 F.2d 1341 (D.C. Cir. 1979) (denying return of $5,000 to claimant who had given money to undercover agent for purchase of heroin);

[27] *Farrell*, 606 F.2d 1341, 1348 (citing *Clark v. U.S.*, 102 U.S. 322, 331-32, 26 L. Ed. 181(1880).

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 10th, 2008.